# FEDERAL DEFENDER SERVICES
# OF WISCONSIN, INC.

LEGAL COUNSEL

Craig W. Albee, Federal Defender
Krista A. Halla-Valdes, First Assistant

Guy Cardamone, Madison Supervisor
Elizabeth Blair
John W. Campion
Alexandra Douglas
Ramuel R. Figueroa
Matthew Giesfeldt
Jonathan Greenberg
Gabriela A. Leija
Julie K. Linnen
Dennise Moreno
Tom Phillip
Joshua D. Uller
Alex Vlisides

411 East Wisconsin Avenue
Suite 2310
Milwaukee, Wisconsin 53202

Telephone 414-221-9900
Facsimile 414-221-9901

September 4, 2024

Honorable Lynn Adelman
Eastern District of Wisconsin
517 East Wisconsin Avenue
Milwaukee, WI 53202

Re:     United States v. James Marshall
        Case no. 24-cr-109

Dear Judge Adelman,

James Marshall accepted responsibility for stealing checks from the mail while working for the post office. At sentencing, he will ask the Court to impose a sentence of probation so that he may continue his current employment and pay restitution. James believes this is a fair and just sentence when considering his personal characteristics, his lack of prior criminal convictions, his cooperation with the investigation and prosecution of his crime, and flawless conduct while on pretrial release.

James committed his theft as he faced financial debt that was difficult for him to manage. He had never engaged in conduct like this before. He recounts that the opportunity was there and when he was desperate enough, he stole. When he got away with it the first time, he became nervous and fearful and thought he would never do it again. But when opportunity coincided with a desperate need—he did.

F͟ederal D͟efender S͟ervices
    Of Wisconsin, I͟nc.

Honorable Lynn Adelman
September 4, 2024
Page 2


After he was caught, James returned to exercising better judgment. He confessed his wrongdoing to investigators and accepted responsibility by waiving prosecution by Indictment and pleading guilty to an Information. When he was released on a personal recognizance, he demonstrated that he can be trusted to make good choices in the community even when it requires him to make substantive changes—like achieving and maintaining sobriety from marijuana.

After James lost his four-year employment with the United States Post Office—a punishment all on its own—James bounced back and found full-time employment with America Customer Care Inc. where he has worked since April 2024. He has kept a job the entire time he has been on pretrial release and faithfully abided by his other conditions of release.

James' family, who has always provided strong support in the community for him, was stunned to learn of James' offense. But not only does the family continue to support him, they have used this catastrophic event in his life as an opportunity to reconnect and find better ways of communicating with each other about their struggles—bringing the family closer. James has become more honest with his family about his financial and emotional struggles.

James submits that considering his personal characteristics, lack of prior criminal convictions, and nonviolent nature of his offense makes him a good candidate for probation. He offers this memorandum in support of his recommendation that the Court impose a sentence of a 2-year term of probation.

*James' personal characteristics demonstrate he can be trusted to remain in the community.*

James has always enjoyed the love and support of his mother, Yvette, and sister, Javia. He's never had a relationship with his father but believes it may have ultimately been to his benefit—James' father has a history of arrests and imprisonment. Yvette provided James with all his basic needs and ensured James was shielded from traumatic incidents of neglect or abuse. As a result, James holds strong admiration for his mother and all she has provided throughout his life.

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

James prior record includes a single citation for simple possession of marijuana (accounting for his one criminal history point), so this will be his first criminal conviction—a felony. He had never been investigated or arrested before and the experience of being interrogated was overwhelming for him. He knew stealing was wrong and admitted his conduct when questioned by police. In fact, he admitted to conduct beyond what law enforcement suspected. And for over a year, he lived with the stress and fear about the consequences he would face and what his future held.

James was also nervous and embarrassed when he disclosed his offense to his mother and sister because he knew they would both be very disappointed. He knew he was raised to make better decisions and knew that they would have supported him if he had asked for help. He was ashamed that he had felt too embarrassed to tell them about his struggles given the poor decisions that resulted in substantial debt to begin with. True to his experience throughout his upbringing, however, his mother remained supportive and helped him learn from the experience so that he wouldn't find himself in a situation like this again.

James has leaned into his family support during this difficult time for him. His mother, sister, and girlfriend have been amongst the biggest motivators in James' life to make better choices. He deeply regrets disappointing them and knowing that his choices have them worried and scared for him too. He is doing all he can to show them that he can take "accountability for his actions" like he was taught to do, and to "be the son that [his mother] raised him to be." PSR at ¶20.

***The guidelines are not a good measure of relative culpability or adequate punishment for his crime.***

The applicable sentencing guideline in this case fails to provide an appropriate measure for punishment and ignores required § 3553(a) considerations. Specifically, the applicable provisions rely upon and place too much emphasis on factors that are not a good measure of relative culpability, like loss amount. They also arbitrarily and substantially increase punishment by overlapping enhancements that amount to "little more than different ways to characterize" the same conduct. *United States v. Jackson*, 346 F.3d 22, 26 (2nd Cir. 2003).

James is not claiming that his offense is not serious—it absolutely is. James was trusted with sorting the mail so that it could be delivered to its intended recipient. James violated

the public's trust in the U.S. Postal mail service by stealing during his shifts. He stole checks that he then deposited into uncharged co-conspirators' bank accounts to cash. He accepted responsibility from the moment he was caught and now has a federal felony conviction to show for it.

But the guidelines here all but preclude probation and ignore important factors the Court must consider under 18 U.S.C. § 3553(a) that supports a community-based sentence. Adherence to this flawed guideline contravenes the parsimony provision of § 3553(a) which requires judges to first consider the least restrictive sentence—probation—to determine a sentence that is sufficient but not greater than necessary. Only when the Court concludes that achieving a goal of sentencing (deterrence, punishment, or incapacitation) requires imprisonment, should the court consider the length of prison that is necessary to meet that goal. James addresses the limitations of the enhancements below.

*Loss amount is not a good measure of culpability.*

The applicable guideline adds a 2-level enhancement for loss and intended loss amount. Although the loss amount is an important consideration for the Court, it's not an appropriate measure of relative culpability to distinguish between defendants. Many fraud cases do not involve a defendant with a plan to steal a specific amount of money. Typically, the loss will be the product of security procedures in place and the point in time in which the crime is detected. *United States v. Emmenegger*, 329 F.Supp.2d 416, 427-428 (S.D.N.Y. 2004). A defendant may control neither of these factors.

Here, James' theft was a crime of opportunity. In his acceptance of responsibility statement, he explained that was struggling to pay his bills and when he saw "checks on the machines [he] was working on[, he] thought [of stealing one] and see if it would work and once it worked and [he] was able to pay some bills [he] just kept doing it which led to this point in [his] life which he deeply regrets." James did not have an elaborate plan to steal a specific amount of money or for a specific amount of time. The amount he stole was more the result of opportunity than intent. After each theft he told himself he would never do it again, but when he became desperate, he did.

Importantly, the amount lost does not inform the Court of the defendant's motives and will treat a defendant who steals to "finance a lavish lifestyle the same as one who steals the same amount to pay for an operation of a sick child." *United States v. Ranum*, 353

F.Supp.2d 984, 990 (E.D. Wis. 2005). Here, James did not steal to finance a lavish lifestyle. Indeed, when James made the worst decision of his life, he was desperate to stay above water on his debts and used the money he stole to pay his bills.

*The 2-level enhancement for abuse of public or private trust is captured by the offense and the 2-level enhancement for being an organizer, leader, manager, or supervisor overstates James' conduct.*

Any theft involves the abuse of trust and James pleaded guilty to theft of mail. The addition of a 2-level enhancement arbitrarily increases punishment by overkill of enhancements. A mail theft offense, in particular, not only assumes an abuse of trust of the public as a mail carrier—it essentially requires that the government prove it as an element of the offense. Doc. 2 at 5 (Plea Agreement – elements). The Court should not find that this enhancement warrants additional punishment or imprisonment.

Additionally, James admitted to police and in his acceptance of responsibility statement that he asked J.H. to use her account to deposit the checks and cash them. James offered to pay J.H. a portion of the cashed check if she agreed—and she did. This was not an elaborate scheme, and James did not use threats, violence, or coercive tactics. When James asked J.H. to participate, she could have said no, and there is no reason to believe it would have gone any further. An additional 2-level enhancement for this conduct and the attendant increase in imprisonment recommendation is not warranted under these circumstances.

For these reasons, James respectfully requests that the Court not impose a sentence needlessly inflated by the recommended guideline range. He submits that the least restrictive sentence necessary to achieve the goal of sentencing in this case is a term of probation.

*James' personal characteristics and pretrial release conduct demonstrate that he is a good candidate for probation.*

Nothing in James' social history, this offense, his two prior municipal citations, or conduct while on pretrial release suggest that James needs imprisonment to deter him. James does not have any history of engaging in similar conduct in the past—or any other crime that has led to a criminal prosecution. He lost employment with the U.S. Postal Service and is unlikely to be re-hired, so an opportunity to commit this offense in the future is likely foreclosed. And given the law-abiding and prosocial life he has otherwise

held and that he immediately returned to after his crime was detected, it appears the experience of this investigation and prosecution, the disappointment of his family, the felony conviction as well as the collateral consequences of his felony conviction, and the accountability attendant to a term of probation are more than enough to deter him from engaging in this type of conduct in the future.

Similarly, the Court does not need to impose a prison sentence to adequately punish James and a sentence of probation here is sufficient to promote respect for the law. James does not need imprisonment to inform him of the seriousness of his offense. James acknowledged the poor judgment and decision-making he exercised in committing this offense when he confessed to law enforcement, waived prosecution by indictment, and pleaded guilty to an Information. And he has already suffered consequences as a result of his conduct: he lost his long-term stable employment. *United States v. Samaras*, 390 F.Supp.2d 805 (E.D. Wis. 2005) (imposing below guideline sentence, in part, because "as a consequence of his conviction and sentence, defendant lost a good public sector job, another factor not supported by the guidelines"). And the "conviction itself already visits substantial punishment" and will continue to punish him going forward. *United States v. Stewart*, 590 F.3d 93, 141 (2d Cir. 2009); *United States v. Chevelle Nesbeth*, 15-cr-18, Opinion at 2 (E.D.N.Y. May 25, 2016) ("There is a broad range of collateral consequences [of felony convictions] that serve no useful function other than to further punish criminal defendants after they have completed their court imposed sentences");Michelle Alexander, *The New Jim Crow*, 142 (2010) (""[m]yriad laws, rules, and regulations operate to discriminate against ex-offenders and effectively prevent their reintegration into the mainstream society and economy. These restrictions amount to a form of 'civi[l] death' and send the unequivocal message that 'they' are no longer part of 'us.'").

James' felony will burden him with the "discrimination, stigma, and exclusions [that] are perfectly legal" when a person is labeled a felon. Alexander, M., *The New Jim Crow*, at 94 (2012).[1] He will lose employment opportunities, and those who take a chance on her will

---

[1] "Today a criminal freed from prison has scarcely more rights, and arguably less respect, than a freed slave or a black person living "free" in Mississippi at the height of Jim Crow. Those released from prison on parole can be stopped and searched by the police for any reason ... and returned to prison for the most minor of infractions, such as failing to attend a meeting with a parole officer. . . . The "whites only" signs may be gone, but new signs have gone up--notices placed in job applications, rental agreements, loan applications, forms for welfare benefits, school applications, and petitions for licenses, informing the general public that "felons" are not wanted here. A criminal record today authorizes precisely the forms of discrimination we supposedly left behind-discrimination in employment, housing, education, public benefits, and jury service. Those labeled criminals can even be denied the right to vote." *Id.* at 141.

demand that she earn and work hard to keep their trust. The punishment he has already suffered, and punishment he will continue to suffer because of his felony conviction are sufficient punishment under the circumstances of this case.

Imprisonment is also not necessary to keep the community safe. There is nothing in James' social history, this offense, prior citations, or conduct while on supervised release that suggests imprisonment is necessary to keep the community safe. There is no violence or traces of violence in James' social history or prior encounters with law enforcement. James has never been accused of possessing or using a weapon unlawfully—let alone to hurt or threatened to harm anyone. And his compliance with the conditions of his pretrial release has been flawless. Indeed, James was able to cease the use of marijuana despite his prior reliance on it for over half a decade. All these factors demonstrate that James can be trusted to remain on probation in the community without a risk to the safety of the public.

A prison term is also not necessary to address James' rehabilitative needs. James has not only diligently abided by the Court's conditions of pretrial release, but he has also already addressed his rehabilitative needs: he is employed full-time and achieved and maintained sobriety from marijuana. A term of probation would enable James to continue working and to make restitution payments—an important factor to consider when determining an appropriate sentence in this case. James would also be able to continue his sobriety, while working, paying his personal debt and the restitution ordered in this case.

For these reasons, James will respectfully request that the Court impose a sentence of 2 years' probation. He submits that this sentence is sufficient, but not greater than necessary to achieve the goals of sentencing.

Sincerely,

*/s/ Gabriela A. Leija*